UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANCISCO RUIZ,<br><br>　　　　　　Plaintiff,<br><br>　　　　v.<br><br>NANCY BERRYHILL,<br>Acting Commissioner of Social Security<br>Administration,<br><br>　　　　　　Defendant. | Case No. CV 16-2580-SP<br><br><br>MEMORANDUM OPINION AND<br>ORDER |

**I.**

**<u>INTRODUCTION</u>**

On April 14, 2016, plaintiff Francisco Ruiz filed a complaint against defendant, the Commissioner of the Social Security Administration ("Commissioner"), seeking a review of a denial of a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI"). Both plaintiff and defendant have consented to proceed for all purposes before the assigned Magistrate Judge pursuant to 28 U.S.C. § 636(c). The court deems the matter suitable for adjudication without oral argument.

1

Plaintiff presents two disputed issue for decision: (1) whether the Administrative Law Judge ("ALJ") erred in finding that plaintiff did not meet a listing at step three; and (2) whether the ALJ properly considered plaintiff's credibility. Motion in Support of Plaintiff's Complaint ("P. Mem.") at 3-8; Memorandum in Support of Defendant's Answer ("D. Mem.") at 2-9.

Having carefully studied the parties' memoranda, the Administrative Record ("AR"), and the decision of the ALJ, the court concludes that, as detailed herein, the ALJ committed harmless error at step three, but failed to properly consider plaintiff's credibility. The court therefore remands this matter to the Commissioner in accordance with the principles and instructions enunciated in this Memorandum Opinion and Order.

## II.

## **FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff was forty years old on the alleged disability onset date, and has an eleventh grade education. AR at 50, 67, 168. Plaintiff has past relevant work doing maintenance, groundskeeper. *Id*. at 62.

On March 7, 2013, plaintiff filed applications for a period of disability, DIB, and SSI, alleging an onset date of October 18, 2010 due to a severe back injury (bulging discs) and his pre-diabetic status. *Id*. at 67, 75. The Commissioner denied plaintiff's applications initially, after which he filed a request for a hearing. *Id*. at 85-89, 92-94.

Plaintiff, represented by counsel, appeared at a hearing before the ALJ on September 23, 2014. *Id*. at 45-66. The ALJ also heard testimony from Howard Goldfarb, a vocational expert. *Id*. at 62-65. On October 9, 2014, the ALJ denied plaintiff's claim for benefits. *Id*. at 32-40.

Applying the well-known five-step sequential evaluation process, the ALJ found, at step one, that plaintiff had not engaged in substantial gainful activity

since October 18, 2010, the alleged onset date. *Id*. at 34.

At step two, the ALJ found plaintiff suffered from the following severe impairments: multi-level degenerative disc disease; herniated nucleus pulposus of the spine; and status-post right shoulder arthroscopy with rotator cuff repair. *Id*.

At step three, the ALJ found plaintiff's impairments, whether individually or in combination, did not meet or medically equal one of the listed impairments set forth in 20 C.F.R. part 404, Subpart P, Appendix 1 (the "Listings"). *Id.* at 35.

The ALJ then assessed plaintiff's residual functional capacity ("RFC"),[1] and determined he had the RFC to: lift and/or carry twenty pounds occasionally and ten pounds frequently; stand and/or walk for a total of two hours out of an eight-hour workday, with the need to use a cane for all ambulation; sit for a total of six hours out of an eight-hour workday; occasionally climb ramps and stairs, balance, stoop, kneel, crouch, or crawl; and occasionally reach at or above the shoulder level with the right upper extremity. *Id*. The ALJ further found plaintiff needed to change positions from sitting, standing, and walking every thirty minutes while remaining on task. *Id*. The ALJ restricted plaintiff from: climbing ladders, ropes, and scaffolds; even moderate exposure to vibration; walking on uneven terrain; unprotected heights; and dangerous moving machinery. *Id*.

The ALJ found, at step four, that plaintiff could not perform his past relevant work. *Id*. at 38.

At step five, the ALJ determined that given plaintiff's age, education, work experience, and RFC, there were jobs that exist in significant numbers in the

---

[1] Residual functional capacity is what a claimant can do despite existing exertional and nonexertional limitations. *Cooper v. Sullivan*, 880 F.2d 1152, 1155-56 n.5-7 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007).

3

national economy that plaintiff could perform, including table worker, optical lens inserter, and optical assembler. *Id*. at 38-39. Consequently, the ALJ concluded plaintiff did not suffer from a disability as defined by the Social Security Act. *Id*. at 39-40.

Plaintiff filed a timely request for review of the ALJ's decision, which was denied by the Appeals Council. *Id.* at 1-4. The ALJ's decision stands as the final decision of the Commissioner.

## III.
## <u>STANDARD OF REVIEW</u>

This court is empowered to review decisions by the Commissioner to deny benefits. 42 U.S.C. § 405(g). The findings and decision of the Social Security Administration must be upheld if they are free of legal error and supported by substantial evidence. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001) (as amended). But if the court determines that the ALJ's findings are based on legal error or are not supported by substantial evidence in the record, the court may reject the findings and set aside the decision to deny benefits. *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d 1144, 1147 (9th Cir. 2001).

"Substantial evidence is more than a mere scintilla, but less than a preponderance." *Aukland*, 257 F.3d at 1035. Substantial evidence is such "relevant evidence which a reasonable person might accept as adequate to support a conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Mayes*, 276 F.3d at 459. To determine whether substantial evidence supports the ALJ's finding, the reviewing court must review the administrative record as a whole, "weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion." *Mayes*, 276 F.3d at 459. The ALJ's decision "'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'"

*Aukland*, 257 F.3d at 1035 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). If the evidence can reasonably support either affirming or reversing the ALJ's decision, the reviewing court "'may not substitute its judgment for that of the ALJ.'" *Id.* (quoting *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992)).

## IV.
## DISCUSSION

### A. The ALJ Committed Harmless Error at Step Three

Plaintiff argues the ALJ erred at step three by failing to find that plaintiff met Listing 1.04A. P. Mem. at 3-4. Specifically, plaintiff contends that the ALJ, despite citing objective findings meeting the characteristics of Listing 1.04A, determined plaintiff did not meet any Listing. *Id.*

At step three, the ALJ determines whether a claimant's impairments, individually or in combination, meets or equals a Listing. *See* 20 C.F.R. §§ 404.1520(d), 416.920(d). An impairment meets a Listing if it meets *all* of the criteria of a listed impairment. *See* 20 C.F.R. §§ 404.1525(d), 416.925(d); *Sullivan v. Zebley*, 493 U.S. 521, 530, 110 S. Ct. 885, 107 L. Ed. 2d 967 (1990). An impairment equals a Listing if the medical findings are equal in severity to all the criteria of a listed impairment. *See Sullivan* 493 U.S. at 531. The claimant has the burden of proving he or she met or equaled a Listing. *Hoopai v. Astrue*, 499 F.3d 1071, 1074 (9th Cir. 2007). The claimant must set forth the evidence which would support a finding he or she met or equaled a Listing. *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005).

"An ALJ must evaluate the relevant evidence before concluding that a claimant's impairments do not meet or equal a listed impairment. A boilerplate finding is insufficient to support a conclusion that a claimant's impairment does not do so." *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001). The ALJ is not,

5

however, required to discuss the evidence supporting the step three determination in a "Step Three Findings" section itself. *Id.* at 513. Instead, the ALJ can meet this requirement by discussing the relevant evidence supporting the step three determination anywhere in the decision. *Id.*

Listing 1.04A provides as follows:

> 1.04 Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

Listing § 1.04A.

Here, plaintiff only argues that his impairments met, not equaled, Listing 1.04A.[2] P. Mem. at 3-4. Defendant contends the ALJ's determination was supported by substantial evidence because the medical evidence did not show that plaintiff's impairments satisfied every element of Listing 1.04A and no physician found plaintiff met a Listing. *See* D. Mem. at 2.

---

[2] Plaintiff did not argue he met Listing 1.04A at the hearing or in any documents submitted to the ALJ. Although a claimant is required to argue to an ALJ that his impairment was equivalent to a Listing, it is unclear whether a claimant is required to identify the particular Listing he purports to meet to the ALJ. *See Burch*, 400 F.3d at 683. ("An ALJ is not required to discuss the combined effects of claimant's impairments or compare them to any listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence.")

6

There does not appear to be any dispute that plaintiff suffers from a disorder of the spine resulting in the compromise of a nerve root or spinal cord. As the ALJ noted, an MRI dated October 10, 2012 showed plaintiff had disc protrusions, narrowing of bilateral recesses with effacement of transiting nerve roots at multiple levels, and encroachment of nerve roots at multiple levels, which compromised the spinal canal. *See* AR at 36, 227-31. And a nerve conduction study from October 26, 2012 was suggestive of neuropathy. *See id*. at 36, 248-50.

Plaintiff, however, must also satisfy all of the criteria in subpart A. The ALJ noted the objective records showed plaintiff had nerve compression, tenderness to palpation, sensory deficits, motor deficits, and decreased range of motion. *See id*. at 36-37. If this were the entirety of the objective findings, they would not satisfy all the criteria in Listing 1.04A because it also requires positive straight-leg raising test in both the sitting and supine positions when the lower back is involved. But the ALJ's discussion of the evidence was incomplete. The record actually includes many findings of positive straight leg raise tests both in the sitting and supine positions. *See, e.g., id*. at 301, 375, 472-73, 546-48. Taken together with the findings the ALJ discussed, the objective findings appear to indicate that plaintiff met all of the criteria in Listing 1.04A. Thus, the ALJ erred at step three because he failed to discuss all of the evidence relevant in a step three determination.

Nevertheless, the error was harmless. Defendant correctly notes that plaintiff failed to meet all of the requirements of Listing 1.04A for the requisite period of time. *See* D. Mem. at 3-4; *DeLorme v. Sullivan*, 924 F.2d 841, 846-47 (9th Cir. 1991) (plaintiff did not meet a Listing because there was no twelve-month period during which all of the criteria of the particular Listing were met). Although plaintiff appeared to satisfy all of the criteria in Listing 1.04A for a portion of time, the record does not demonstrate that plaintiff had sensory and motor loss for a continuous twelve-month period. To the contrary, the record

7

shows that plaintiff only exhibited sensory and motor deficits from about October 2012 through February 2013. *See* AR at 268-69, 280, 287, 384. By March 2013, plaintiff had normal reflexes and active movement against gravity with full resistance. *See id*. at 261. Plaintiff continued exhibiting normal reflexes and strength through the remainder of 2013. *See id*. at 401, 444-45, 475-76. Because plaintiff only satisfied all the criteria for Listing 1.04A for, at most, four months, he did not meet Listing 1.04A.

Thus, although the ALJ failed to properly consider all of the medical evidence relevant to Listing 1.04A, the error was harmless because plaintiff cannot demonstrate he satisfied all of the criteria for a continuous twelve-month period.

**B.**     **The ALJ Failed to Properly Consider Plaintiff's Credibility**

Plaintiff argues the ALJ failed to properly consider his credibility. P. Mem. at 4-8. Specifically, plaintiff contends the reasons the ALJ cited for discounting his credibility were not clear and convincing. *Id*.

An ALJ must make specific credibility findings, supported by the record. Social Security Ruling 96-7p. To determine whether testimony concerning symptoms is credible, an ALJ engages in a two-step analysis. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). First, an ALJ must determine whether a claimant produced objective medical evidence of an underlying impairment "'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Id.* at 1036 (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). Second, if there is no evidence of malingering, an "ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996) (citation omitted); *accord Burrell v. Colvin*, 775 F.3d 1133, 1136-37 (9th Cir. 2014).

An ALJ may consider several factors in weighing a claimant's credibility,

including: (1) ordinary techniques of credibility evaluation such as a claimant's reputation for lying; (2) the failure to seek treatment or follow a prescribed course of treatment; and (3) a claimant's daily activities. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008); *Bunnell*, 947 F.2d at 346-47. The lack of objective medical evidence to support allegations of limitations is also a factor that may be considered when evaluating credibility, but it may not be the only factor considered. *See Rollins v. Massanari*, 261 F.3d 853, 856-57 (9th Cir. 2001) (lack of corroborative objective medical evidence may be one factor in evaluating credibility); *Bunnell*, 947 F.2d at 345 (an ALJ "may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain").

At the first step, the ALJ here found plaintiff's medically determinable impairments could reasonably be expected to cause "some significant functional limitations," but not beyond those set forth in the RFC. AR at 36. At the second step, because the ALJ did not find any evidence of malingering, the ALJ was required to provide clear and convincing reasons to discount plaintiff's credibility.

The extent to which the ALJ here in fact discounted plaintiff's credibility is unclear. The ALJ explicitly noted plaintiff's "credible testimony regarding his hesitation to undergo back surgery," among other things, caused the ALJ to find plaintiff limited to sedentary work. *Id.* at 37. The only aspect of plaintiff's testimony that the ALJ clearly rejected was plaintiff's testimony regarding the side effects he experienced from his medication, including drowsiness and sleepiness. *See id.* The ALJ specifically rejected this testimony on the ground that there was no objective corroboration of plaintiff's complaints about the side effects. *Id.* Viewing the ALJ's decision more liberally, however, the ALJ impliedly may have provided up to three reasons for finding plaintiff less credible in general: (1) plaintiff received conservative treatment; (2) there was a lack of objective medical

9

evidence to support the complaints; and (3) plaintiff's statements regarding the side effects of his medication were not supported by the record.[3] *See id.* at 36-37.

### 1. Conservative Treatment

The ALJ noted plaintiff received conservative treatment, including physiotherapy, chiropractic care, aquatic therapy, and acupuncture. *Id*. at 36. The ALJ then noted plaintiff also received narcotic medication, facet joint injections, and epidural steroid injections. *Id.* It is not at all clear that the ALJ meant to indicate he found plaintiff's treatment as a whole to be conservative, much less that he discounted plaintiff's credibility on this basis. Nonetheless, the court first considers whether the ALJ may have properly discounted plaintiff's credibility because he found plaintiff received conservative treatment. *See Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) ("[E]vidence of conservative treatment is sufficient to discount a claimant's testimony regarding severity of an impairment.") (internal quotation marks and citation omitted).

Courts have characterized steroid epidural injections as both conservative and not conservative. Typically, in instances of limited or one-time injections, the courts have deemed the treatment conservative. *See, e.g.*, *Jones v. Comm'r*, 2014 WL 228590, at *7 (E. D. Cal. Jan. 21, 2014) (occasional use of epidural injections in conjunction with massages and anti-inflammatory medications could be considered conservative); *Veliz v. Colvin*, 2015 WL 1862924, at *8 (C.D. Cal. Apr. 23, 2015) (single steroid injection did not undermine ALJ's finding that plaintiff received conservative treatment); *Gonzales v. Colvin*, 2015 WL 685347, at *11 (C.D. Cal. Feb. 18, 2015) (treatment consisting of medication and a single steroid

---

[3] Defendant argues the ALJ also discounted plaintiff's credibility because it conflicted with the medical opinions. D. Mem. at 8. In his conclusion, the ALJ stated no medical opinions support functional limitations greater than the ones he determined, but he did not connect this statement to plaintiff's credibility. *See* AR at 38.

10

injection was conservative). In contrast, other courts have deemed this treatment not conservative, in particular when a claimant was treated with other injections and narcotic pain medication. *See, e.g., Yang v. Colvin*, 2015 WL 248056, at *6 (C.D. Cal. Jan. 20, 2015) (collecting cases finding spinal epidural injections are not conservative); *Christie v. Astrue*, 2011 WL 4368189, at *4 (C.D. Cal. Sept. 16, 2011) (refusing to characterize steroid, trigger point, and epidural injections as conservative). Here, plaintiff did not receive only a single injection. He received multiple types of injections on many occasions, all of which only provided temporary relief, as well as being prescribed narcotic medications. *See* AR at 398.

Similarly, the use of narcotic medication, by itself, may be considered conservative treatment. *See Huizar v. Comm'r*, 428 Fed. Appx. 678, 680 (9th Cir. 2011) (finding that plaintiff responded to conservative treatment, which included the use of narcotic medication); *Higinio v. Colvin*, 2014 WL 47935, at *5 (C.D. Cal. Jan. 7, 2014) (holding that, despite the fact that plaintiff had been prescribed narcotic medication at various times, plaintiff's treatment as a whole was conservative); *Grisel v. Colvin*, 2014 WL 1315894, at *12 (C.D. Cal. Apr. 2, 2014) (use of narcotic pain medication was conservative when it provided relief and was not in combination with other treatments such as epidural injections). But, in general, the Ninth Circuit and its district courts have viewed the use of narcotic pain medication as non-conservative treatment, particularly when in conjunction with other treatments that were also not conservative. *See, e.g., Lapeirre-Gutt v. Astrue*, 382 Fed. Appx. 662, 664 (9th Cir. 2010) (treatment consisting of "copious" amounts of narcotic pain medication, occipital nerve blocks, and trigger point injections was not conservative); *Soltero De Rodriguez v. Colvin*, 2015 WL 5545038, at *4 (C.D. Cal. Sept. 18, 2015); *Christie v. Astrue*, 2011 WL 4368189, at *4 (C.D. Cal. Sept. 16, 2011) (treatment with narcotics, steroid injections, trigger point injections, epidural injections, and cervical traction was not

11

conservative).

In addition, as the ALJ recognized, a treating physician recommended surgery as an option to plaintiff, which is indisputably not conservative. *See* AR at 36, 449, 480, 549. Although plaintiff declined surgery because there was no guarantee of success and he had a young daughter, the ALJ recognized this was a "credible" reason for declining to undergo surgery. *See* AR at 36, 37; *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007) (failure to seek treatment may be a basis for an adverse credibility finding unless there was a good reason for not doing so).

Accordingly, taken all together, any finding by the ALJ that plaintiff received conservative treatment was not supported by substantial evidence. If the ALJ intended this as a reason to discount plaintiff's credibility, it was not clear and convincing.

### 2. **Lack of Objective Evidence**

The second reason potentially cited by the ALJ for finding plaintiff less credible was the objective medical evidence did not justify further functional limitations than those outlined in his RFC determination. AR at 36-37; *see Rollins*, 261 F.3d at 856-57. Here, the ALJ presented the objective evidence and did not explain why the objective evidence did not support plaintiff's allegations. Although defendant cites examples of medical evidence that may not have corroborated plaintiff's alleged limitations such as findings of normal reflexes and strength, the ALJ does not cite such evidence. *Compare* D. Mem. at 7-8 with AR at 36-37. Nevertheless, the objective evidence cited by the ALJ can still reasonably support affirming the ALJ's decision. As such, this court will not substitute its judgment. But on its own, the objective medical evidence does not provide a clear and convincing reason to discount plaintiff's credibility. *See Bunnell*, 947 F.2d at 345.

### 3. **Side Effects**

The ALJ's final reason for discounting plaintiff's credibility was plaintiff's complaints about his medication side effects could not be corroborated by the record. AR at 37. At the hearing, plaintiff testified that he experienced drowsiness and sleepiness from his medications, he told his physicians about the side effects, and his physicians did not change his medications. *Id*. at 58-59. Plaintiff's treatment records show that he told a treating physician that Gabapentin made him "too sleepy" and an examining physician that the medications caused stomach irritation. *Id*. at 435, 495. Thus, the ALJ's reason was not supported by substantial evidence.

In sum, the ALJ cited at most one reason for discounting plaintiff's credibility that may have been supported by substantial evidence. But while lack of objective evidence may be a factor in a credibility finding, it cannot be the sole reason to discount a claimant's credibility. *Burch*, 400 F.3d at 680. As such, the ALJ erred in discounting plaintiff's credibility.

## V.

## **REMAND IS APPROPRIATE**

The decision whether to remand for further proceedings or reverse and award benefits is within the discretion of the district court. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). Typically, in accordance with the "ordinary remand rule," the reviewing court will remand to the Commissioner for additional investigation or explanation upon finding error by the ALJ. *Treichler v. Comm'r*, 775 F.3d 1090, 1099 (9th Cir. 2014). Nonetheless, it is appropriate for the court to exercise its discretion to direct an immediate award of benefits where: "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinions; and (3) if the improperly discredited evidence were credited as true, the ALJ would be

required to find the claimant disabled on remand." *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014) (setting forth three-part credit-as-true standard for remanding with instructions to calculate and award benefits). But where there are outstanding issues that must be resolved before a determination can be made, or it is not clear from the record that the ALJ would be required to find a plaintiff disabled if all the evidence were properly evaluated, remand for further proceedings is appropriate. *See Benecke v. Barnhart*, 379 F.3d 587, 595-96 (9th Cir. 2004); *Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir. 2000). In addition, the court must "remand for further proceedings when, even though all conditions of the credit-as-true rule are satisfied, an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled." *Garrison*, 759 F.3d at 1021.

Here, remand is required because the ALJ failed to properly consider plaintiff's credibility, and failed to make clear findings in that regard. On remand, the ALJ shall reconsider plaintiff's subjective complaints and either credit his testimony or provide clear and convincing reasons supported by substantial evidence for rejecting it. The ALJ shall then proceed through steps two, three, four, and five to determine what work, if any, plaintiff was capable of performing.

//
//
//

# VI.
# **CONCLUSION**

IT IS THEREFORE ORDERED that Judgment shall be entered REVERSING the decision of the Commissioner denying benefits, and REMANDING the matter to the Commissioner for further administrative action consistent with this decision.

DATED: October 11, 2017

_____
SHERI PYM
United States Magistrate Judge